UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROADZEN, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　　-v-<br><br>METEORA CAPITAL PARTNERS,<br>L.P., *et al.*,<br>　　　　　　　　　Defendants. | 25-CV-7867 (JPO)<br><br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Roadzen, Inc. ("New Roadzen") brings this action against Meteora Capital Partners, L.P., Meteora Select Trading Opportunities Master, L.P., Meteora Strategic Capital, LLC, Meteora Capital, LLC, and individuals Vikas Mittal, Joseph Levy, Kevin S. Gahwyler, and Henry Rogano (collectively, "Defendants"), alleging fraud, fraudulent inducement, misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, racketeering, unjust enrichment, and various violations of federal securities law, 15 U.S.C. §§ 77, 78; 17 U.S.C. §§ 240.10b-5, 240.10(b).  (*See generally* ECF No. 9 ("FAC").)  New Roadzen also seeks a declaratory judgment piercing the corporate veil and holding Rogano, Mittal, Levy, and Gahwyler jointly and severally liable for all asserted causes of action.  (*Id.*)  For the reasons that follow, Defendants' motion to dismiss is granted.

## I.　Background

### A.　Factual Background

The following facts are drawn from New Roadzen's Amended Complaint (the "FAC") and are presumed true for purposes of resolving this motion.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam).

### 1. Parties and Merger

New Roadzen is a global insurance technology company incorporated in the British Virgin Islands. (FAC ¶¶ 1-2.) New Roadzen came to be publicly traded through a merger with Vahanna Tech Edge Acquisition I Corp. ("Vahanna"), a special purpose acquisition company ("SPAC") incorporated in the British Virgin Islands that had been listed on the Nasdaq stock exchange since November 2021. (*Id.* ¶¶ 3, 6-8, 209.) The merger between Vahanna and Old Roadzen, a Delaware corporation and wholly owned subsidiary of New Roadzen, was completed on or about September 20, 2023, resulting in the formation of the publicly traded New Roadzen. (*Id.* ¶¶ 4-6, 8, 247.)

Defendants Meteora Capital Partners, L.P., Meteora Select Trading Opportunities Master, L.P., Meteora Strategic Capital, LLC, and Meteora Capital, LLC (collectively, "Meteora") are SEC-registered investment advisors operating out of offices in Boca Raton, Florida and New York, New York. (*Id.* ¶¶ 9-29.) The individual defendants—Vikas Mittal, Joseph Levy, Henry Rogano, and Kevin Gahwyler—served as officers, managing members, and partners of the Meteora entities, and each allegedly exercised management and control over those entities. (*Id.* ¶¶ 30-192.) Meteora Capital, LLC is an affiliate that owns and controls each of the other Meteora entities. (*Id.* ¶¶ 193-201.)

### 2. The Agreements

According to the FAC, shortly before the merger, Vahanna and Old Roadzen entered into a Forward Purchase Agreement with Defendants (the "FPA" or the "Agreement), in which Meteora would acquire up to 5,000,000 SPAC shares, after which Vahanna would reimburse Meteora 100% of the purchase price, leaving Meteora with a zero-cost basis in the shares. (*Id.* ¶¶ 244-45.) Upon any subsequent sale of those shares, Defendants agreed to remit a pre-agreed

"reference price" of $10.76 per share to New Roadzen, retaining any proceeds above that amount.  (*Id.*)  In the event that Defendants sold any share below the reference price, they were still obligated to remit the sum of $10.76 per share to New Roadzen.  (*Id.*)  Moreover, pursuant to the FPA, after the merger and creation of New Roadzen, the number of shares of stock that Defendants were permitted to sell was limited, and Defendants were required to give New Roadzen written notice of all sales of stock within five business days.  (*Id.*)  The term of the Agreement expired in March 2025, at which time New Roadzen would purchase from Defendants all remaining shares held by Defendants at $1.25/share.  (*Id.*)

On or about January 30, 2024, the parties amended the agreement (*see* ECF No. 9-2 (the "Amendment")) to allow New Roadzen to request advances of up to $5,000,000 in $500,000 increments, with Meteora permitted to recoup each advance—plus a 17% fee—through subsequent share sales at any market price. (FAC ¶¶ 290-91.)

New Roadzen alleges that Defendants, from the outset, never intended to honor their obligations under the Agreement.  (*Id.* ¶ 269.)  Defendants allegedly sold New Roadzen shares in the market without disclosing those sales to New Roadzen as allegedly required by the Agreement and repeatedly misrepresented the number of shares they held in order to conceal those undisclosed transactions.  (*Id.* ¶¶ 276, 285.)  Meteora's 13F filings revealed that its reported shareholding declined from 4,297,745 unrestricted shares at the time of the merger to 1,267,163 shares as of March 31, 2025, yet Defendants remitted the $10.76 reference price for only a fraction of the shares sold.  (*Id.* ¶¶ 252, 306, 312-13.)  Based on those figures, Roadzen calculates that Defendants failed to remit approximately $28,465,192.64 owed under the Agreement.  (*Id.* ¶ 313.)

3

New Roadzen further alleges that Defendants manipulated the market price of Roadzen stock by selling an excessive number of shares in a short period, causing the share price to fall below $10.00 and never recover to the $10.76 reference price.  (*Id.* ¶¶ 278-80.)  Additionally, when New Roadzen requested a $500,000 advance pursuant to the Amendment—after less than $5,000,000 had been advanced in total—Defendants refused to fund the request, allegedly knowing that New Roadzen would then be forced to seek capital elsewhere in a manner that could trigger a downward "reset" reference price, thereby reducing Defendant's contractual obligations.  (*Id.* ¶¶ 297-300.)

### B.    Procedural Background

New Roadzen filed this action in this Court on September 22, 2025.  (ECF No. 1.)  It amended its complaint on October 17, 2025.  (FAC.)  On January 30, 2026, Defendants filed their motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 29), along with an accompanying memorandum of law (ECF No. 30 ("Mem.")).  On March 17, 2026, New Roadzen filed its opposition to the motion to dismiss. (ECF No. 34 ("Opp.")), and Defendants filed their reply memorandum on April 3, 2026 (ECF No. 39).

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead facts sufficient to state a claim to relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under this pleading standard, a complaint must "nudge[]" the claims "across the line from conceivable to plausible."  *Id.* Pleadings must contain "something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedur*e § 1216 (4th ed. 2025).  On a motion to dismiss, a court must

4

accept all allegations in the complaint as true.  *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir. 1978).

In deciding a motion to dismiss for failure to state a claim, courts may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Accordingly, the Court may consider the FPA on this motion to dismiss because it is the "Forward Share Purchase Agreement" (*id.* ¶ 239) referenced in the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quotation marks omitted)).

### III.    Discussion

#### A.    Procedural Defect

As an initial matter, New Roadzen argues that Defendants did not file a Notice of Motion or any other "notice" to give New Roadzen proper notice as to the relief being sought.  (Opp. at 9.)  According to New Roadzen, "it is not clear whether [Defendants are] making a motion pursuant to FRCP 12(b)(6) to dismiss alleging that Plaintiff failed to set forth factual allegations in the [FAC] to support the causes of actions asserted or a motion based upon FRCP Rule 56 seeking dismissal on the merits."  (*Id.*)

New Roadzen is incorrect.  Defendants filed their "Notice of Defendants' Motion to Dismiss the Amended Complaint" on the docket on January 30, 2026.  (ECF No. 29.)  In that Notice, Defendants explicitly stated that they would move the Court "for an Order dismissing the Amended Complaint in its entirety and with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."  (*Id.* at 1.)  Defendants thus properly provided New Roadzen notice as

5

to the relief being sought and the legal basis upon which their motion is based.  Moreover, New Roadzen was properly served, as "[t]his is an ECF action, which means that service is complete upon filing, provided all parties receive [a Notice of Electronic Filing]." *Interglobo Customs Broker, Inc. v. Herschel Imports, Inc.*, No. 14-CV-4995, 2015 WL 3756799, at *3 (S.D.N.Y. June 5, 2015) (citing Rule 9.1 of the Electronic Case Filing Rules & Instructions of this district).

New Roadzen further contends that Defendants' motion to dismiss relies on "their [own] 'reading'" of the parties' agreements, which New Roadzen characterizes as convoluted and contradictory, and that Defendants improperly "cherry pick" provisions to support their position. (Opp. at 9.)  But this argument goes to the merits, not procedure.  At most, it suggests that Defendants may not ultimately prevail on the motion; it does not establish any procedural defect.

Accordingly, the Court will not deny Defendants' motion to dismiss on procedural grounds.

### B.        Breach of Contract

To state a claim for breach of contract, New Roadzen must allege: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  If the contract is clear and unambiguous, it must be interpreted "according to the plain meaning of its terms." *Hughes Commc'ns India Priv. Ltd. v. The DirecTV Grp., Inc.*, 71 F.4th 141, 148 (2d Cir. 2023).

According to New Roadzen, Meteora's breach of the FPA is fourfold: (1) Defendants failed to remit money to New Roadzen upon the sale of shares of New Roadzen stock; (2) Defendants did not timely recoup advanced funds or advance funds as contracted for in the Amendment to the FPA; (3) Defendants failed to give New Roadzen a 30-day registration

6

request or a 30-day notice to cure before sending New Roadzen a default notice; and (4)

Defendants failed to report the sale of New Roadzen stock.  (Opp. at 34.)

### 1.      Remittance of Money to New Roadzen

New Roadzen's FAC alleges that the FPA required Defendants to remit $10.76 to New

Roadzen for each New Roadzen share that Defendants sold.  (FAC ¶¶ 245(o), 481(a).)  But

neither the FPA nor the Amendment contains any such term.  (*See* ECF No. 30-4 ("FPA");

Amendment).)  To the contrary, the FPA expressly provides, in the section entitled "Transactions

by Seller in the Shares," that "[s]ubject to any restrictions set forth in this Confirmation,

[Defendants] may sell or otherwise transfer, loan or dispose of any of the Shares . . . in one or

more public or private transactions at any time."  (FPA at 20.)  And nowhere else in the FPA or

Amendment does any provision impose a restriction requiring Defendants to remit sale proceeds

to New Roadzen, contemporaneous or otherwise.  Because no such restriction exists, the

"[s]ubject to" clause is not triggered, and the FPA permitted Defendants to sell shares during the

valuation period without any contemporaneous obligation to remit proceeds to New Roadzen.

Under the FPA, any obligation to make a payment to New Roadzen arising from New

Roadzen shares arose only at the conclusion of a defined "valuation period" and was not fixed at

$10.76 per share.  (*Id.* at 6.)  Rather, the amount owed, if any, was determined pursuant to the

formula set forth in the FPA.  Specifically, the FPA provides:

> In the event the Valuation Date is determined by clause (c) of the above section
> entitled Valuation Date, a cash amount equal to (1) the Number of Shares as of
> the Valuation Date, multiplied by (2) the closing price of the Shares on the
> Exchange Business Day immediately preceding the Valuation Date.  In all other
> cases, a cash amount equal to (1) (x) the Number of Shares as of the Valuation
> Date less (y) the number of Unregistered Shares . . . multiplied by (2) the volume
> weighted daily VWAP Price over the Valuation Period.

(*Id.*)

Accordingly, the FPA contemplated a variable end-of-period reconciliation based on the number of shares remaining and the applicable market-price formula, not an immediate $10.76-per-share remittance upon each sale.  During the interim, Defendants retained the right to sell shares, subject only to the specific limitations contained in the FPA and Amendment.

Despite this, New Roadzen now argues that it "believed and believes that the provisions as more clearly set forth in the Term Sheet [] as orally amended were incorporated into the agreements." (Opp. at 33-34.)  The Term Sheet to which New Roadzen refers is not a contract. Indeed, it explicitly states that the "above terms do not constitute an offer nor create any binding commitment on behalf of Meteora Capital, LLC and its affiliated entities." (ECF No. 34-6 at 3.) Moreover, it was "for discussion purposes only" and was not "intended to form . . . the basis of any future or present contract or arrangement." (*Id.* at 4.)  Indeed, the FPA contains a merger clause disclaiming all prior oral representations. (FPA at 2.)  "[I]f the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further." *Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 411 (S.D.N.Y. 2011) (quotation marks omitted).  Given the explicit statement by Defendants that they did not intend to be bound, the Court will not bind them to the so-called Term Sheet, a nonbinding overview that does not constitute the FPA itself.

### 2.    Failure to Timely Advance the Funds

According to New Roadzen, pursuant to the Amendment to the FPA, Defendants were required to advance up to $5,000,000 in $500,000 increments and Defendants were required to sell shares at any price to recoup the advance of funds plus 17%, as contracted for, and to subsequently advance the funds to New Roadzen. (FAC ¶ 291.)  New Roadzen now contends

that Defendants breached the Amendment by not timely advancing the funds as contracted for. (*Id*. ¶¶ 296-97.)

Defendants contend that New Roadzen's FAC lacks sufficient factual detail to provide adequate notice of the claim being asserted. (Mem. at 27.) Specifically, Defendants argue that the FAC does not identify the date or dates of any alleged request, the amount requested, the recipient of the request, or how Meteora allegedly responded. (*Id.*) According to Defendants, the FAC's conclusory allegation that a request was made under the Amendment, without specifying when the request was made, the amount sought, or any other supporting facts, fails to satisfy even Rule 8's liberal notice-pleading standard because it does not provide Meteora with fair notice of the basis for the claim. (*Id.*)

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Strunk v. U.S. House of Representatives*, No. 02-6159, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (per curiam) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," but it does require, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, No. 00-7711, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (quotation marks omitted). "Dismissal, however, is usually reserved for those cases in which the

9

complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Nygard v. Bacon*, No. 19-CV-1559, 2020 WL 12800148, at *4 (S.D.N.Y. July 24, 2020) (quotation marks omitted). "When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." *Id.*

Here, Defendants are correct that New Roadzen has provided insufficient facts to put Defendants on fair notice of this claim. However, because the deficiency is one of factual detail rather than legal theory, leave to amend is warranted and New Roadzen is granted leave to amend to supply the factual basis for this claim.

### 3.    30-Day Registration Notice

In opposing Defendants' motion to dismiss, New Roadzen contends that Defendant Levy sent a default notice "with the clear intent to revise downward the 'Reference Price'" without providing the 30-day cure period required by the contract. (Opp. at 34 (citing ECF Nos. 34-2, 34-3).) Because New Roadzen did not plead this theory in its FAC, it is waived, and the Court will not consider it now. *See Nesheiwat v. City of Poughkeepsie, N.Y.*, No. 11-CV-7072, 2013 WL 620267, at *3 (S.D.N.Y. Feb. 13, 2013) (new legal claims may not be raised for the first time in opposition to a motion to dismiss).

### 4.    Report of Sale

New Roadzen next claims that Defendants "were required to give [New Roadzen] written notice of all sales of stock within 5 business days" (FAC ¶ 245), and that they failed to do so "notwithstanding demand by" New Roadzen (Opp. at 34). But New Roadzen cites no provision of the FPA imposing any such obligation, and none exists. The FPA's notice requirements are limited and triggered by specific contractual elections, not by sales activity generally. If Meteora

10

elected to sell its shares from the FPA early, for example, it was required to deliver written notice specifying the quantity of terminated shares.  (FPA at 7.)  Defendants were required to provide written notice of any shortfall sales to New Roadzen no later than the fifth "Local Business Day" following the sale date, specifying the quantity of shares sold and the allocation of proceeds.  (*Id.*)  Defendants were also required to make regulatory filings required by law, including under Sections 13 and 16 of the Exchange Act, but those obligations run to regulators, not to New Roadzen.  (*Id.* at 20.)  These provisions do not support the sweeping general duty New Roadzen now claims.  Because the FPA imposes no obligation to report individual stock sales, this claim fails as a matter of law.

### C. Unjust Enrichment

To state an unjust enrichment claim, a plaintiff must plead "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 172 N.Y.S.3d 649, 658 (2022) (cleaned up).  Pursuant to Federal Rule of Civil Procedure 8, courts allow plaintiffs to assert unjust enrichment claims "as pleadings in the alternative at the motion to dismiss stage," but only in cases "where the validity and scope of the contract is difficult to determine, where the parties dispute the existence of a contract, or where the claims arise out of agreements or understandings of the parties that were not expressly written in the contract." *Keybanc Cap. Mkts., Inc. v. Extreme Steel, Inc.*, 710 F. Supp. 3d 239, 247 (S.D.N.Y. 2024) (cleaned up).  Otherwise, when a valid and enforceable contract covers the same subject matter as the unjust enrichment claim, "recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009).

Although New Roadzen is permitted to plead unjust enrichment in the alternative, its unjust enrichment claim arises from the same subject matter covered by the contract. (FAC ¶¶ 588-91.) The sale of New Roadzen shares and the alleged requirements to advance funds fall squarely within the scope of the FPA and the Amendment. (*Id.*; Mem. at 46-47.) The parties do not dispute that the FPA and Amendment are enforceable contracts or that the claims here arise out of the provisions of those contracts. New Roadzen's unjust enrichment claim is therefore dismissed.

### D.    Fraud, Fraud in the Inducement, and Misrepresentation

New Roadzen asserts separate claims for fraud, fraud in the inducement (FAC at 43), and misrepresentation (*id.* at 50). Under New York law, however, "a claim for intentional misrepresentation . . . is identical to a claim for fraud." *Assoun v. Assoun*, No. 14-CV-1368, 2015 WL 110106, at *5 (S.D.N.Y. Jan. 7, 2015) (collecting cases). Moreover, where a plaintiff "cannot allege a different set of facts or legal theories giving rise to a separate fraud claim from those giving rise to its fraudulent inducement claim, its fraud claim is dismissed as duplicative" of the fraudulent inducement claim. *CVI Invs., Inc. v. Mariano*, No. 19-CV-2960, 2019 WL 7067089, at *5 (S.D.N.Y. Dec. 20, 2019). Here, New Roadzen uses the terms "fraud" and "fraud in the inducement" interchangeably throughout its opposition. (Opp. at 36-40.) The Court therefore understands those claims to rest on the same alleged misrepresentations and legal theory. Accordingly, the Court analyzes only New Roadzen's fraud claim. Because that claim fails for the reasons discussed below, its misrepresentation claim likewise fails, and its fraud-in-the-inducement claim is dismissed both for the same reasons and because it is duplicative.

Under New York law, a plaintiff generally may not recover in tort for conduct arising from a contractual relationship unless it pleads and proves "a breach of duty distinct from, or in

addition to, the breach of contract." *GoSmile, Inc. v. Levine*, 915 N.Y.S.2d 521, 524 (1st Dep't 2010) (quotation marks omitted) (quoting *Non-Linear Trading Co. v. Braddis Assoc.*, 675 N.Y.S.2d 5, 13 (1st Dep't 1998)).

Consistent with that principle, the Second Circuit has held that a fraud claim arising from a contractual relationship is viable only where the plaintiff: "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted). Satisfaction of any one of these three circumstances is sufficient. *See Subramanian v. Lupin, Inc.*, No. 17-CV-5040, 2020 WL 7029273, at *13 (S.D.N.Y. Aug. 21, 2020), *report and recommendation adopted*, No. 17-CV-5040, 2020 WL 6075523 (S.D.N.Y. Oct. 15, 2020).

Critically, a party's misrepresentation that it intended to perform under a contract does not support a claim for fraud. *Bridgestone/Firestone*, 98 F.3d at 19 ("[I]ntentionally-false statements . . . indicating [an] intent to perform under the contract . . . [are] not sufficient to support a claim of fraud under New York law."). Thus, a fraud claim is duplicative of a breach-of-contract claim when "the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *First Bank of Americas v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 20-21 (1st Dep't 1999).

That is exactly what New Roadzen alleges here. According to New Roadzen, it entered into the FPA expecting to receive the benefits promised under the agreement, but "did not account for" Defendants' alleged willingness to breach their contractual obligations, including

13

the implied covenant of good faith and fair dealing.  (Opp. at 38.)  In other words, New

Roadzen's fraud claim rests entirely on the assertion that Defendants never intended to perform

the contract as promised.  New York courts have repeatedly held that such allegations merely

restate a breach-of-contract claim and therefore cannot support an independent fraud claim.  *See,*

*e.g., Popal v. DiLorenzo*, 231 A.D.3d 1067, 1069 (2d Dep't 2024); *Refreshment Mgmt. Servs.,*

*Corp. v. Complete Off. Supply Warehouse Corp.*, 89 A.D.3d 913, 914 (2d Dep't 2011); *New York*

*Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995).

New Roadzen contends that the damages for its fraud claim are distinct from those sought

under its breach-of-contract claim, asserting that the fraud damages encompass the loss of the

17% payment, the difference between the amount loaned and the per-share recovery from stock

sold to recoup the loan, and the associated transaction costs.  (Opp. at 39.)  New Roadzen further

maintains that the damages for fraud and breach of contract are not duplicative.  (*Id.*)  This

argument is unavailing.  In setting forth its breach-of-contract claim, New Roadzen explicitly

alleges that Defendants' breach included their failure to recoup the advance funds together with

the 17% payment.  (FAC ¶¶ 481.)  Accordingly, a recovery on the breach of contract claim

would necessarily encompass the 17% payment, which is the very same element New Roadzen

now characterizes as distinct from its fraud claim.  Courts in this Circuit have consistently held

that claims sounding in fraud must be dismissed as duplicative where they rest on the same

underlying wrongs and seek the same damages as a breach-of-contract claim.  *Clement v.*

*Farmington Cas. Co.*, No. 13-CV-1026, 2015 WL 6971565, at *7 (S.D.N.Y. Nov. 10, 2015).

Because New Roadzen's fraud claim is predicated on the same conduct and seeks the

same relief as its contract claim, it cannot survive as an independent cause of action and must be

dismissed.

###### E.    Breach of the Covenant of Good Faith and Fair Dealing

Under New York law, parties to a contract "are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks omitted). There is no "separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* at 81. Therefore, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

Here, New Roadzen's claim for breach of the implied covenant of good faith and fair dealing is duplicative of its claim for breach of contract. New Roadzen alleges that Defendants breached the implied covenant of good faith and fair dealing by "by engaging in transactions that drove down the market price of Roadzen shares and further failed to conduct themselves and itself consistent with the terms and conditions of the Funding Agreement as Amended." (FAC ¶ 489.) New Roadzen argues that the good-faith-and-fair-dealing claim is somehow distinct from the breach-of-contract claim (*see* Opp. at 41-42), but both claims are based upon Defendants' alleged failure to act according to the terms of the FPA.

In fact, New Roadzen expressly states that it has "set forth allegations of breach contract, fraud and misrepresentations . . . and based thereon has alleged the necessary elements of Breach of Covenant of Good Faith and Fair Dealing." (*Id.* at 42.) But this is precisely the type of duplicative pleading that New York law does not allow. *See County of Orange v. Travelers Indem. Co.*, No. 13-CV-6790, 2014 WL 1998240, at *3 (S.D.N.Y. May 14, 2014) (dismissing claim of breach of the covenant of good faith and fair dealing as duplicative of the breach-of-

15

contract claims when the "facts giving rise to the two claims are the same: that [defendant] did not perform its contractual duties as it had agreed to under the insurance policy"); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009) ("[T]o simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must . . . base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims."). Therefore, the claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### F.    Stock Manipulation

New Roadzen asserts claims for stock manipulation under 15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5 and 240.10(b). To state such a claim, a plaintiff must allege: "(1) manipulative acts; (2) damage[s]; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; [and] (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). Because a claim for market manipulation sounds in fraud, it must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Id*. That rule requires a plaintiff to state with particularity "the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." *Id.* at 102; Fed. R. Civ. P. 9(b).

New Roadzen's claim fails at the threshold. The FAC does not allege any manipulative act, let alone with the particularity Rule 9(b) demands. Because this deficiency is independently fatal to the claim, the Court need not address the remaining grounds for dismissal.

A manipulative act, as that term is used in the securities laws, "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead

16

investors by artificially affecting market activity." *ATSI*, 493 F.3d at 100 (quotation marks omitted) (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)).  The term "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Id.* (quotation marks omitted) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)).  The relevant inquiry is whether the defendant's conduct "sends a false pricing signal to the market." *Id.*  Critically, even where a defendant engages in open-market transactions, "[i]n order for market activity to be manipulative, that conduct must involve misrepresentation or nondisclosure." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011).

The FAC here falls well short of that standard.  New Roadzen alleges, in substance, only that "Defendants did sell some shares of Plaintiff's stock in the market and profited from those sales," and that "[a]s a result of Defendants['] stock manipulation, the price of the [New] Roadzen stock decreased below $10 per share."  (FAC ¶¶ 274, 279.)  Such allegations are insufficient as a matter of law.  "[T]rading, in and of itself, does not constitute market manipulation." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 539 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013).

The Second Circuit's decision in *ATSI* is instructive here.  There, the plaintiff alleged high-volume selling of the company's stock with coinciding drops in price, which are materially indistinguishable allegations from those advanced here.  493 F.3d at 96-97.  The court affirmed dismissal, observing that "selling—even in high volumes—is not, by itself, manipulative." *Id.* at 101, 104.  The court further noted that the plaintiff had offered "no specific allegations that the defendants did anything to manipulate the market," such as "how many shares the defendants

17

sold, when they sold them, and why those sales caused the precipitous drop in stock price." *Id.*

at 103.  New Roadzen's FAC suffers from the same defects.

Nor do any of the FAC's remaining allegations supply the requisite "something more."

*Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 460 (S.D.N.Y. 2015) (no

manipulation where plaintiff alleged "no wash sale, no matched order, and no price rigging");

*see also Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 496-97 (S.D.N.Y.

2011) ("The Plaintiffs are unable to allege any specific acts by [the defendant] to manipulate the

market purposefully.").  "Unusually large sales, without a doubt, cannot be the basis for a market

manipulation claim," because "[m]ere sales do not inject false information into the market

place." *Nanopierce Techs., Inc. v. Southridge Cap. Mgmt.*, No. 02-CV-767, 2008 WL 1882702,

at *2 (S.D.N.Y. Apr. 21, 2008).

Nothing in the FAC suggests that Defendants' stock sales were anything other than

routine open-market transactions.  Absent allegations of wash sales, matched orders, price

rigging, or any other conduct designed to inject false information into the market, New Roadzen

has failed to plead a manipulative act.  Its stock manipulation claim is therefore dismissed.

### G.    18 U.S.C. §§ 1961-1968 (RICO)

Before 1995, plaintiffs could bring private civil RICO claims based on securities fraud

because "fraud in the sale of securities" constituted a qualifying predicate offense.  *MLSMK Inv.*

*Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273-74 (2d Cir. 2011).  Plaintiffs frequently used

RICO in this context because it offered the prospect of treble damages.  *Id.* at 274.

Congress changed this landscape in 1995 by enacting Section 107 of the Private

Securities Litigation Reform Act (the "PSLRA") as an amendment to the RICO statute.  The

amendment bars any person from relying on "conduct that would have been actionable as fraud

in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). The legislative history makes clear that Congress intended the amendment to go beyond simply removing securities fraud as a standalone predicate act. It was also designed to prevent plaintiffs from repackaging securities fraud as other predicate offenses, such as mail or wire fraud, to circumvent the bar. *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999).

The amendment's reach is broad. It bars civil RICO claims premised on securities fraud even when the plaintiff itself lacks standing to bring a securities fraud action. *MLSMK Inv. Co.*, 651 F.3d at 277; *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). Moreover, the bar extends not only to claims a plaintiff could personally have brought, but also to claims that the SEC could have pursued. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 726 (S.D.N.Y. 2013), *vacated on other grounds and remanded sub nom. Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016). Accordingly, a civil RICO claim that mirrors the allegations underlying a potential SEC enforcement action is subject to dismissal under the amendment, given the SEC's primary role in policing securities fraud. *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 646 (S.D.N.Y. 2017).

New Roadzen's RICO claim under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), is expressly barred by the PSLRA because it rests on the same fraudulent conduct underlying its securities fraud counts. The FAC makes this plain: New Roadzen defines its racketeering conduct as "the fraudulent conduct set forth hereinabove" and describes the alleged pattern of racketeering activity as "the ongoing fraudulent policies and practice of the individual Defendants." (FAC ¶¶ 527-28.)

19

New Roadzen attempts to sidestep the PSLRA by recasting its RICO claim as arising from a "commercial lending transaction," arguing that any securities-related conduct was "incidental and tangential" to a loan-based fraud-in-the-inducement claim. (Opp. at 46-47.) This recharacterization is unsupported by the FAC and directly contradicts positions New Roadzen takes elsewhere in its own opposition brief. The FAC expressly ties the racketeering allegations to the fraudulent conduct alleged throughout the pleading. (*See, e.g.*, FAC ¶ 527.) The opposition brief itself characterizes the alleged "Funding Scheme" as a violation of Section 5 of the Securities Act of 1933, frames the fraud-in-the-inducement claim as involving stock manipulation by a "de[]facto underwriter," and identifies SEC violations concerning Defendants' ability to sell Roadzen shares as central to the fraud. (Opp. at 12, 14, 38, 42.)

New Roadzen may not use its opposition brief to amend its pleadings, *Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ. L. Rev.*, No. 18-CV-9184, 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020), *aff'd sub nom. Fac. v. New York Univ.*, 11 F.4th 68 (2d Cir. 2021), nor may it advance allegations that are internally inconsistent with those it has pleaded, *U.S. Bank Nat. Ass'n v. Bank of Am., N.A.*, No. 12-CV-4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012). Accordingly, the RICO claim is barred and must be dismissed.

### H.    Personal Liability

Finally, New Roadzen seeks a declaratory judgment that Defendants abused the corporate form, that the corporate veil should be pierced, and that Defendants Rogano, Mittal, Levy, and Gahwyler should be held jointly and severally liable for all causes of action asserted in the FAC. (FAC ¶ 478.) In determining whether declaratory relief is appropriate, courts consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from

uncertainty." *Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  New Roadzen offers no explanation as to how a declaratory judgment would serve either purpose here.  (*See generally* Opp. at 47-49.)

In any event, New Roadzen fails to plead facts sufficient to justify piercing the corporate veil.  Courts are "extremely reluctant to disregard corporate form" and will do so only where a corporation primarily conducts the business of a dominating individual or entity rather than its own.  *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000).  To overcome the strong presumption of corporate separateness, a plaintiff must allege facts demonstrating a "virtual abandonment of separateness," *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995), such as disregard of corporate formalities, inadequate capitalization, intermingling of funds or assets, overlapping ownership and management, non-arm's-length dealings, or the treatment of separate entities as a single enterprise, *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997).  New Roadzen alleges none of these facts and makes no meaningful effort to satisfy the stringent requirements for disregarding corporate independence.  Accordingly, its request for declaratory relief based on veil-piercing must be dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss New Roadzen's FAC is GRANTED, with leave to amend as to New Roadzen's breach-of-contract claim related to Defendants' alleged failure to timely advance funds, and with prejudice as to all other claims.

New Roadzen shall file a letter within 14 days of the publication of this opinion indicating whether it intends to amend the complaint with respect to that claim.  If New Roadzen elects to amend, a second amended complaint shall be filed within 21 days of the publication of

this opinion and shall be limited to the above-referenced claim; and Defendants shall file any answer or motion to dismiss the amended claim within 21 days of the filing of New Roadzen's second amended complaint.  If New Roadzen elects not to amend, the Court will enter judgment of dismissal, permitting an appeal.

The Clerk of Court is directed to close the motion at Docket Number 29.

SO ORDERED.

Dated: July 9, 2026
New York, New York

_____
J. PAUL OETKEN
United States District Judge

22